**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ELECTROSTIM MEDICAL**
**SERVICES, INC.,**

   **Plaintiff,**      **Case No.: 8:11-CV-0246-VMC-TBM**

**v.**

**DAWN LINDSEY and ZYNEX**
**MEDICAL, INC.,**

   **Defendants.**

            /

**ELECTROSTIM MEDICAL SERVICES, INC.'s**
**MOTION FOR PRELIMINARY INJUNCTION**
**AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff, Electrostim Medical Services, Inc. ("EMSI"), pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rules 3.01(e), 4.05 and 4.06, files this motion for a preliminary injunction against Defendants, Dawn Lindsey ("Ms. Lindsey") and Zynex Medical, Inc. ("Zynex"), and submits the following memorandum of law in support of its motion. EMSI hereby requests that the Court enjoin Ms. Lindsey from employment with Zynex until such time as the Court can schedule a full hearing on the merits of EMSI's entitlement to a permanent injunction for a period of twenty-four months and preventing Ms. Lindsey, in concert with Zynex, from soliciting EMSI's customers.

## I.  INTRODUCTION

EMSI specializes in the design and sale of non-invasive medical products for the use of pain control and physical rehabilitation (commonly referred to as TENS units). Zynex is a direct competitor of EMSI, providing the same services EMSI provides. Ms. Lindsey and Zynex, who entered an employment relationship directly after Ms. Lindsey's employment with EMSI, are

currently soliciting EMSI's customers.  These actions violate Ms. Lindsey's Agreement Relating to Intellectual Property, Confidential Information, Conflicts of Interest, and Competitive Activities ("Agreement")(Exhibit 1).  While employed with EMSI, Ms. Lindsey executed the Agreement wherein she agreed to refrain from: (1) working for EMSI's competitors; (2) soliciting EMSI's clients; and (3) using or disclosing EMSI's confidential information.  The Agreement is limited to a period of twenty-four months following Ms. Lindsey's termination.

As an employee for EMSI, Ms. Lindsey's duties and responsibilities included identifying and soliciting new business and servicing existing customers and clients.  Ms. Lindsey was provided with access to, and developed, substantial relationships with a myriad of customers and clients while employed by EMSI.  Ms. Lindsey also had access to and utilized EMSI's confidential business information including, but not limited to, confidential business information regarding EMSI's business methods, pricing schedules, projected business and prospective client lists, customer base, and other proprietary information belonging to EMSI.

Ms. Lindsey breached the Agreement by accepting employment with Zynex, an EMSI competitor, by soliciting EMSI's customers, and by divulging and using EMSI's confidential and proprietary information.  Additionally, Ms. Lindsey has continued her employment with Zynex in violation of the Agreement.  Ms. Lindsey and Zynex have already jeopardized and will continue to jeopardize EMSI's relationships with its customers by continuing to solicit EMSI's customers in violation of the Agreement.  If not addressed immediately, these relationships may be irreparably harmed.  In her new employment with Zynex, Ms. Lindsey is in a position to use EMSI's confidential information to EMSI's detriment.  Such use has already occurred and will continue since she cannot "unlearn" EMSI's confidential information.  The information is now part of Ms. Lindsey's knowledge base, which she cannot help but consider in the performance of

her duties with Zynex.   Accordingly, EMSI seeks immediate injunctive relief to preserve the status quo pending the outcome of this litigation.   As discussed below, EMSI meets all the criteria for injunctive relief.

## II.   FACTS SUPPORTING INJUNCTIVE RELIEF

### A.  Factual Background

EMSI, which does business throughout the United States, specializes in the design and sale of non-invasive medical products for the use of pain control and physical rehabilitation (commonly referred to as TENS units)(Declaration of Brian Wilkinson ¶ 2)(Exhibit 2).   Like EMSI, Zynex is a designer and seller of non-invasive medical products for the use of pain control and physical rehabilitation throughout the United States, including TENS Units.   (Id. ¶ 3).   In July, 2004, Ms. Lindsey joined EMSI as a sales person in the Dallas/Fort Worth, Texas market.   (Id. ¶ 4).   At that time, she had no training in EMSI's policies, procedures, business methods or logistics.   In fact, she had no experience in the medical device industry and, upon information and belief, had been a schoolteacher prior to working for EMSI.   (Id. ¶ 4).   When Ms. Lindsey began working for EMSI, EMSI was just beginning to have a sales presence in the Fort Worth, Texas market; Ms. Lindsey was hired to develop this market for EMSI.   (Id. ¶ 7).   As an employee of EMSI, Ms. Lindsey gained access to EMSI's business methods, pricing schedules, customer lists, projected business and prospective client lists, and other confidential and proprietary business information belonging to EMSI.   Ms. Lindsey, with sales and financial support from EMSI, developed a broad customer base in Fort Worth, Texas.   (Id. ¶ 9).   Approximately four years ago, Ms. Lindsey became Area Manager for the entire Dallas/Fort Worth market.   (Id.).

In or around early May 2011, Ms. Lindsey contacted EMSI's Bryan Wilkinson, Vice President of Sales West, and informed him that she was resigning (Id. ¶ 12).  She stated that she was going to work for a bone growth company.  (Id. ¶ 12).  EMSI is not in the bone growth industry and, therefore, Ms. Lindsey becoming employed in that industry did not concern EMSI nor did it implicate the Agreement.  (Id. ¶ 12).  However, during the time period between when she resigned and her final date of employment, EMSI observed that Ms. Lindsey's voicemail had been changed; the voicemail indicated that any customers that were sending her a facsimile with a prescription should send it to a phone number that was not an EMSI phone number.  (Id. ¶ 13).  Mr. Wilkinson called Ms. Lindsey and, after leaving her several messages, she finally called back.  Mr. Wilkinson asked her whether she was leaving EMSI to work for a competitor.  Ms. Lindsey flatly denied that she was.  (Id. ¶ 14).

In late July 2011, after Ms. Lindsey resigned, Jason Cummings, who replaced Ms. Lindsey as Regional Manager over Dallas/Ft. Worth, advised Mr. Wilkinson that business was significantly down in Ms. Lindsey's former market.  (Id. ¶ 15).  Accordingly, Mr. Cummings called one of Ms. Lindsey's former accounts anonymously and inquired about where he could secure a TENS unit.  (Id.).  The person at that account advised him that they would put him in touch with Dawn Lindsey at Zynex.  (Id.).  On or about July 26, 2011, after learning that Ms. Lindsey had left EMSI to work for Zynex, EMSI's counsel sent Ms. Lindsey and Zynex letters that each contained copies of the Agreement, reminding them of Ms. Lindsey's duty not to compete with EMSI for 24 months.  (Exhibit "3").  Neither party responded to EMSI's correspondence.  In August 2011, a prescription form was accidently faxed to EMSI by a customer that had previously been doing business with EMSI.  (Exhibit "B" to Declaration of Bryan Wilkinson).  This facsimile was addressed to Ms. Lindsey, and was on a Zynex form

bearing Ms. Lindsey's name.  (Id.).  On or about August 9, 2011 after neither party responded to the July 26, 2011 letters, EMSI's counsel e-mailed Ms. Lindsey the July 26, 2011 correspondence.   (Exhibit "4").   EMSI's counsel emailed Ms. Lindsey the July 26 correspondence once again, on or about August 26, 2011, but Ms. Lindsey still did not respond. (Exhibit "5").   After repeatedly attempting to get Ms. Lindsey and Zynex to abide by the agreement, without receiving any acknowledgement from either Zynex or Ms. Lindsey, EMSI filed suit against both parties on or about September 8, 2011.   Once the suit was filed, the undersigned counsel emailed a copy of the filed lawsuit to Thomas Sandgarrd, Zynex's President and CEO.   Finally, a couple days later, an attorney for Zynex contacted the undersigned counsel.[1]

Ms. Lindsey had the most comprehensive view of all of EMSI's customer information of anyone at EMSI in this market.  (Id. ¶ 11).  She used this data to solicit EMSI's customers in direct violation of the Agreement.  Zynex, which upon information and belief did not have any market presence in the Dallas/Fort Worth market prior to Ms. Lindsey becoming employed there, is currently gaining a substantial market share.  (Id. ¶ 19).  Conversely, since Ms. Lindsey left EMSI and became employed by Zynex, EMSI's business in the Dallas/Fort Worth market has decreased by between 50% to 90% of what it was when Ms. Lindsey was employed.  (Id. ¶ 20).

In short, by leaving EMSI to work for Zynex, Ms. Lindsey has breached the Agreement. Ms. Lindsey's departure for a direct competitor is a precise example of the consequence EMSI sought to avoid when it entered into the Agreement with Ms. Lindsey.  Ms. Lindsey has brought Zynex all of the relationships she developed while employed by EMSI, at EMSI's expense, which is now using it to its benefit and to EMSI's detriment.

---

[1] From the date that the undersigned was first contacted by Zynex's counsel until just recently, the parties have attempted to resolve this matter without judicial intervention.  As evidenced by the existence of this motion, those efforts have reached an impasse.

### B.  The Agreement

At the beginning of her employment with EMSI, Ms. Lindsey executed the Agreement. In the Agreement, Ms. Lindsey agreed not to compete with EMSI for a 24 month period following her employment with EMSI:

> <u>Employee's Agreement not to Compete with Employer</u>.  Employee recognizes and acknowledges that it is essential for the proper protection of the Employer's legitimate business interests that Employee by restrained for a reasonable period following the termination of Employee's employment with the Employer, either voluntarily or involuntarily, from competing with Employer as set forth below.
>
> Employee acknowledges and agrees that during the term of his or her employment with Employer, and for a period of twenty-four (24) months thereafter, Employee will not, directly or indirectly, engage, participate or invest in or be employed by any business within the Restricted Area, as defined below, which:  (i) develops, manufactures, designs, engineers, integrates and/or sells products which are competitive with or similar to products developed or manufactured by Employer; (ii) distributes, markets or otherwise sells, either through a direct sales force or through the use of the Internet, products manufactured by others which are competitive with or similar to products distributed, marketed or sold by Employer; or (iii) provides services, including the use of the Internet to sell, market or distribute products, which are competitive with or similar to services provided by Employer, including, in each case, any products or services Employer has under development or which are the subject of active planning at any time during the terms of Employee's employment.  The foregoing restrictions shall apply regardless of the capacity in which Employee engages, participates or invests in or is employed by a given business, whether as owner, partner, shareholder, consultant, agent, employee, co-venturer or otherwise.
>
> "Restricted Area" shall mean each state and territory of the United States of America in which Employer has developed, marketed, sold and/or distributed its products and/or services within the last two (2) years of Employee's employment.

(<u>See</u> Ex. 1).

Additionally, Ms. Lindsey agreed not to solicit customers or clients of EMSI, as set forth below:

> <u>Non-Solicitation Agreement</u>.  During the term of Employee's employment with Employer and for a period of twenty-four (24) months after termination of the Employee's employment with the Employer for any reason, Employee will not: (i) employ, hire, solicit, induce or identify for employment or attempt to employ,

hire, solicit, induce or identify for employment, directly or indirectly, any employee(s) of the Employer to leave his or her employment and become an employee, consultant or representative of any other entity including, but not limited to, Employee's new employer, if any; and/or (ii) solicit, aid in or encourage the solicitation of, contract with, aid in or encourage the contracting with, service, or contact any person or entity which is or was, within the two (2) years prior to Employee's termination of employment with Employer, a customer or client of Employer, for purposes of marketing, offering or selling a product or service competitive with Employer.

Id.

Furthermore, as part of the Agreement, Ms. Lindsey agreed to keep all proprietary information obtained at EMSI confidential:

At all times, both during Employee's employment with Employer, and after the termination or expiration of Employee's employment, whether voluntarily or involuntarily, Employee acknowledges and agrees to keep in confidence and trust all such Proprietary and Confidential Information and agrees not to use or disclose any such Proprietary and Confidential Information without the written consent of Employer, except as may be necessary in the ordinary course of performing his or her duties to the Employer.

Id.

Finally, Ms. Lindsey also agreed to inform each new employer about the agreement she signed with EMSI prior to accepting employment, for a 24 month period immediately following the end of her employment by EMSI:

Agreement to Inform Subsequent Employers. For the period of twenty-four (24) months immediately following the end of his or her employment by Employer, Employee will inform each new employer, prior to accepting employment, of the existence of this Agreement and provide that employer with a copy of this Agreement.

Id.

The Agreement is a critical aspect of EMSI's efforts to permit EMSI employees to establish close relationships with its top customers while protecting EMSI from having such vital business leave for a competitor if an employee separates employment with EMSI. Additionally,

one of the purposes of the Agreement is to permit EMSI to keep its proprietary information protected from third parties.

When Ms. Lindsey notified EMSI of her resignation and advised EMSI that she was leaving its employ to work for an unnamed company that specialized in "bone growth," she was not only dishonest, but she was also taking the first of many affirmative steps to violate the Agreement. EMSI subsequently learned that Ms. Lindsey was working for Zynex and that she had already called upon and accepted business from the customers that she had served in her market as an employee for EMSI. Ms. Lindsey had access to confidential information relating to EMSI customers during her employment with EMSI, as well as access to EMSI's confidential business solutions for serving and attracting customers in that market.

As a result of Ms. Lindsey's and Zynex's actions, EMSI's direct competitor now has 1) an employee who is soliciting EMSI's clients; 2) an employee who is actively using EMSI's valuable confidential business information; and 3) a pipeline to substantial relationships with important clients of EMSI. Ms. Lindsey's continued employment with Zynex during the non-compete period stands to cause EMSI irreparable harm, including monetary damages which could be difficult or impossible to calculate.

### III.    STANDARD FOR PRELIMINARY INJUNCTION

Injunctions are the normal and favored remedy for breach of restrictive covenants. See Miller Mechanical, Inc. v. Ruth, 300 So. 2d 11, 12 (Fla. 1974)(injunctive relief is the normal remedy for breach of a non-compete agreement "because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the employee's breach of agreement."). Injunctive relief is also an appropriate remedy in cases of common law tortious

interference.  See, e.g., Heavener, Ogier Servs. Inc. v. R.W. Fla. Region, Inc., 418 So. 2d 1074, 1077 (Fla. 5th DCA 1982).

To obtain a preliminary injunction, the movant must establish 1) a substantial likelihood of success on the merits; 2) irreparable injury if the injunction is not granted; 3) the threatened injury to the plaintiff outweighs the potential harm; and 4) granting the injunction will not disserve the public interest.  Klay v. United Healthgroup, Inc., 376 F. 3d 1092, 1097 (11th Cir. 2004).  As set forth below, EMSI satisfies all prongs of the preliminary injunction test.

## IV.    DISCUSSION

### A.  Substantial Likelihood of Success on the Merits

EMSI has sued Ms. Lindsey for breach of contract and has brought claims against Zynex for tortious interference with contract.  EMSI has a substantial likelihood of success on both counts.

### 1.        EMSI has legitimate business interests to protect.

#### a.  Substantial relationships with specific prospective or existing customers

Section 542.335 of the Florida Statutes governs restrictive covenants.  The statute requires that restrictive covenants be supported by a "legitimate business interest," which include (1) trade secrets; (2) valuable confidential business or professional information; (3) substantial relationships with specific prospective or existing customers; (4) customer goodwill associated with an ongoing business or professional practice, a specific geographic location or specific marketing or trade area; and (5) extraordinary or specialized training.  Fla. Stat. § 542.335(1)(b) (2011).

EMSI has several "legitimate business interests" to protect, including its substantial relationships with specific prospective and existing customers.  As another Middle District of

Florida Court has stated,

> There is little question under Florida law that an employer has a legitimate business in prohibiting solicitation of its customers with whom the employee has a substantial relationship.  Where an employee, as here, gains substantial knowledge of his former employer's customers, their purchasing history, and their needs and specifications it follows that the employer has a legitimate business interest under the statute.

N. Am. Prods. Corp. v. Moore, 196 F. Supp. 2d 1217, 1228 (M.D. Fla.2002)(citing

Hapney v. Central Garage, 579 So.2d 127, 134 (Fla. Dist. Ct. App. 1991); Merrill Lynch, Pierce,

Fenner & Smith, Inc. v. Hagerty, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992); See also Int'l Hair &

Beauty Sys., LLC v. Simply Organic, Inc., 2011 U.S. Dist. LEXIS 127336, 18-19 (M.D. Fla.

2011)(showing that engaging in multiple telephonic communications with Plaintiff's customers

to develop and maintain business relationships with them most likely rises to a legitimate

business interest); America II Electronics, Inc. v. Smith, 830 So.2d 906, 907 (Fla. 2d DCA 2002)

(demonstrating that direct solicitation of existing customers invokes a legitimate business

interest).

As a condition of her employment with EMSI, Ms. Lindsey agreed not to "solicit, aid in

or encourage the solicitation of, contract with, aid in or encourage the contracting with, service,

or contact any person or entity which is or was, within the two (2) years prior to Employee's

termination of employment with Employer, a customer or client of Employer, for purposes of

marketing, offering or selling a product or service competitive with Employer."  From the

beginning of Ms. Lindsey's employment, she gained substantial knowledge about EMSI's

customers, their purchasing history, and their needs and specifications.  She then used this

knowledge to further develop the Dallas/Fort Worth market, actively calling on EMSI's

customers to develop and maintain business relationships.  All of her customer relationships

were developed using EMSI's resources within the scope of her employment with EMSI.  Ms.

10

Lindsey also has extensive knowledge of EMSI's customer base in this market, including their referral habits and volume and their key personnel.  Most important, even though EMSI has proven that Ms. Lindsey herself had substantial relationships with actual customers, it is not necessary for EMSI to demonstrate this reality.  See Milner Voice & Data, Inc. v. Tassy, 377 F. Supp. 2d 1209, 1218 (S.D. Fla. 2005)(stating that relevant case law indicates that the proper inquiry focuses on the relationship between an employer and its prospective and existing customers; an employer need not prove that its former employee himself had a substantial relationship with any particular customer).

Even though EMSI need not prove Ms. Lindsey's direct relationships with customers, it is indisputable that Ms. Lindsey herself was provided with access to, and developed, substantial relationships with a myriad of customers and clients while employed by EMSI.  Likewise, it is indisputable that EMSI has a substantial likelihood of success on the merits of establishing a legitimate interest in its relationship with specific prospective or existing customers.

### b.  Valuable confidential business or professional information.

Additionally, Ms. Lindsey has knowledge of and access to EMSI's proprietary and confidential information, including: (1) customer lists; (2) projected business and projected client lists; (3) the structure of customer contracts; (4) pricing options; (5) data on revenue, profitability and volume; (6) strategic EMSI and customer intelligence; (7) customer specific issues, risks and escalations; (8) customer and market trends; (9) customer presentations; (10) customer mapping and business unit mapping of accounts and business potential; and (11) sales pipeline reports with information relevant to multiple customers within the non-invasive medical products sector.

EMSI's confidential information warrants protection.  Florida courts routinely protect confidential business information of the type described in EMSI's Agreement.  See, e.g.,

America II Electronics, 830 So.2d at 907 (agreement not to disclose or use any confidential information, trade secrets, or proprietary information belonging to employer); Supinski v. Omni Healthcare, P.A., 853 So.2d 526, 527 (Fla. 5th DCA 2003)(agreement not to misappropriate employer's trade secrets or confidential information for five years).

Furthermore, in her new employment with Zynex, Ms. Lindsey is in a position to use EMSI's confidential information to EMSI's detriment.  Such use has already occurred and will continue since she cannot "unlearn" EMSI's confidential information.  The information is now part of Ms. Lindsey's knowledge base, which she cannot help but consider in the performance of her duties with Zynex.  In Proudfoot Consulting Co. v. Gordon, 576 F. 3d 1223 (11th Cir 2009), the Eleventh Circuit held that an employee's knowledge of her former employer's confidential business information will support a non-compete agreement, regardless of whether the employee has actually disclosed the information to her new employer.  The court noted that there are two similar lines of Florida cases on the issue.  Under the approach adopted by the Proudfoot district court, such covenants should be enforced where an employee is in a position with her new employer to use her former's employer's confidential information.  See Proudfoot, at 1234.  See also Autonation v. O'Brien, 347 F.Supp.2d 1299, 1305-08 (S.D. Fla. 2004)(employee's access to former employer's strategic plan, market analyses, forecasts, sales trends, and best practices justified restriction against working for competitor in a position to use the information to compete against former employer).

The Eleventh Circuit in Proudfoot concluded that any difference in the two standards is more theoretical than practical as they are likely to produce the same result, which is certainly true here. Id. at 1236, n. 12.  In her new employment with Zynex, Ms. Lindsey has already used, and is in position to continue to use EMSI's, confidential information to EMSI's detriment.  In

fact, such use is inevitable.  Also, like in Proudfoot, where the former employee was deceitful about his post-employment plans, Ms. Lindsey was deceitful about her post-employment intentions.  As such, like in Proudfoot, "one could doubt [Ms. Lindsey's] willingness to faithfully abide by the restrictions in the confidential information clause." Id. at 1236, n. 13.

> **2.     Ms. Lindsey breached the Agreement.**

"Evidence that an enforceable covenant not to compete was breached will support a trial court's finding of the likelihood of success on the merits."  Atomic Tattoos, LLC v. Morgan, 45 So. 3d 63 (Fla. 2d DCA 2010).  "[T]he right to prohibit the direct solicitation of existing customers" is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer.  Dyer v. Pioneer Concepts, Inc., 667 So. 2d 961, 964 (Fla. 2d DCA 1996); see also Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 870 So. 2d 111, 114 (Fla. 2d DCA 2003).  It is undisputed that Ms. Lindsey competed with EMSI within twenty-four months of her separation from EMSI, including soliciting EMSI's customers well before the expiration of that grace period.  Ms. Lindsey also utilized her knowledge of EMSI's sales, customers, marketing techniques and pricing, which is confidential business information afforded protection under Florida law.  Ms. Lindsey agreed that she would not work for a competitor, solicit EMSI's clients, or reveal or utilize the proprietary information she obtained at EMSI.  Therefore, Ms. Lindsey breached the Agreement by accepting employment with Zynex, an EMSI competitor, and by subsequently soliciting EMSI's customers.  While the nature of Ms. Lindsey's relationship with Zynex tends to show that she has disclosed and continues to intend to disclose confidential information, whether she has disclosed or intends to disclose this information is irrelevant.  Her mere exposure to confidential information precludes her from working for Zynex

under the unambiguous terms of the Agreement.

3**.**     **The Agreement is reasonable in time and  geographic scope.**

Ms. Lindsey's Agreement is twenty-four months in duration.   This time period is presumably reasonable under Florida law.  See Fla. Stat. § 542.335(1)(d).  See Am. II Elecs. v. Smith, 830 So. 2d 906 (Fla. Dist. Ct. App. 2d Dist. 2002); see also Shields v. Paving Stone Co., 796 So. 2d 1267 (Fla. Dist. Ct. App. 4th Dist. 2001); Balasco v. Gulf Auto Holding, 707 So. 2d 858 (Fla. Dist. Ct. App. 2d Dist. 1998); Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc., 2011 U.S. Dist. LEXIS 127336 (M.D. Fla. Sept. 26, 2011).   In this case, Ms. Lindsey had unfettered access to EMSI's confidential information, frequently called upon EMSI's existing and prospective customers, was provided with access to, and developed, substantial relationships with a myriad of customers and clients, and thus it is reasonable to restrict Ms. Lindsey from working for EMSI's direct competitors and soliciting specific prospective or existing customers for two years (less than one third of the time she worked for EMSI in total).

Turning to the geographic scope of the non-competition clause, EMSI does business throughout the United States.  As such, the Restricted Area of the Agreement covers each state and territory of the United States of America in which EMSI has developed, marketed, sold and/or distributed its products and/or services within the last two (2) years of Employee's employment.  (Ex. 1).  While the geographic scope of the clause is appropriate considering that EMSI is a nationwide company, EMSI recognizes that in this particular instance, Ms. Lindsey is only competing with EMSI in the Dallas/Fort Worth market.  As such, EMSI is willing to more narrowly tailor the geographic restriction, and to seek enforcement of the Agreement for the Dallas/Fort Worth market only.  Given that Ms. Lindsey frequently called upon EMSI's existing and specific prospective customers in Dallas/Fort Worth, was provided with access to, and

developed, substantial relationships with a myriad of customers and clients in Dallas/Fort Worth only, a Dallas/Fort Worth market restriction is more than reasonable and less narrow than what Florida courts have often enforced.  For example, in <u>Marshall v. Gore</u>, 506 So. 2d 91 (Fla. 2d DCA 1987), the court enforced a nationwide non-compete agreement.  <u>See also</u> <u>Sanford Industries, Inc,. v. Jaghory</u>, 223 So. 2d 77, 78 (Fla. 3d DCA 1969)(nationwide non-compete agreement enforced).  Additionally, courts have modified the geographic limitation of the non-competition agreements to fit the facts of that particular case.  <u>See</u> <u>AutoNation, Inc. v. O'Brien</u>, 347 F. Supp. 2d 1299 (S.D. Fla. 2004)(the Court found the requested injunction reasonable in both time and scope where AutoNation asked that the geographic scope of the injunction be less than provided in the actual Agreement).  Given Ms. Lindsey's entrenched position in the Dallas/Fort Worth market, a geographic restriction for this area is reasonable.

**4.    Zynex tortiously interfered with the Agreement.**

The elements of tortious interference with a contract are: 1) the existence of a valid contract; 2) the third-party has knowledge of the contract; 3) the third party intentionally and unjustifiably interfered with a party's rights under the contract; and 4) damages.  <u>Mariscotti v. Merco Group At Akoya, Inc.</u>, 917 So. 2d 890, 893 (Fla. 3d DCA 2005).

Zynex is aware of Ms. Lindsey's Agreement with EMSI, as evidenced by Ms. Lindsey's obligation to tell Zynex about the Agreement.  Furthermore, EMSI's counsel notified Zynex and Ms. Lindsey about the Agreement, beginning in late July 2011.  If Zynex somehow contends it still did not know about the Agreement after hiring Ms. Lindsey, which is dubious considering that companies in this industry customarily ask prospective employees about any such agreements, Zynex was undoubtedly made aware of the Agreement as a result of EMSI's counsel's communications.  Further, Ms. Lindsey was hired, and retained, for one express

purpose -- to solicit and accept business from customers in the Dallas/Ft. Worth market, so there can be little doubt that Zynex's intention upon hiring Ms. Lindsey was to get her to breach her contract with EMSI.

Zynex continues to employ Ms. Lindsey.  By initially employing Ms. Lindsey, and by continuing to employ her, Zynex has intentionally and unjustifiably interfered with the Agreement between EMSI and Ms. Lindsey, resulting in injury to EMSI.  See Continental Group v. KW Property Management, 622 F.Supp.2d 1357 (S.D. Fla. 2009)(entering injunction against new employer where new employer caused employee to breach non-compete agreement, finding that former employer has a claim for tortious interference with contract).  EMSI therefore has a substantial likelihood of success on the merits of its tortious interference claims against Zynex.

### B.      Irreparable Injury

Because EMSI has demonstrated Ms. Lindsey's violation of an enforceable restrictive covenant, "a presumption of irreparable injury" arises.    §542.335(j), Fla. Stat. (2011). Furthermore, as Magistrate Porcelli very recently concluded, in recommending entry of an injunction in a non-compete case, "the loss of customers and good will is an irreparable injury and is difficult to measure" See Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc., 2011 U.S. Dist. LEXIS 127336 (M.D. Fla. 2011)(quoting Southeastern Mechanical Services, Inc. v. Brody, 2008 U.S. Dist. LEXIS 123211 (M.D.Fla. 2008).

In this case, there is actual loss of EMSI's customers, and the potential loss of customers in the future is imminent.  Thus, the evidence of irreparable harm is not only presumed, it is also supported by the record evidence.  Ms. Lindsey and Zynex cannot overcome the statutory presumption or the evidence of irreparable harm to EMSI.  Accordingly, Ms. Lindsey and Zynex must be enjoined.

### C.        Balancing of Harms

As a matter of law, this Court "[s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement [of a restrictive covenant] is sought."  Sect. 542.335(1)(g)(1); accord N. Am. Prods. Corp. v. Moore, 196 F. Supp. 2d at 1231.   In other words, the harm, if any, suffered by EMSI is legally irrelevant to Rule 65 analysis.  See Id.  Regardless, the enforcement of Ms. Lindsey's restrictive covenants with EMSI will impose no undue hardship on Defendants.   Ms. Lindsey is free to work anywhere, for anyone and in any occupation as long as it is not in direct competition with EMSI in the Dallas/Fort Worth market.  Even that limitation is only for a period of twenty-four months.  By the same token, Zynex is free to hire anyone in the labor force other than Ms. Lindsey.  It can even hire Ms. Lindsey if it waits the requisite time period or employs her outside of the Dallas/Fort Worth market.  By contrast, EMSI is threatened with irreparable harm if Ms. Lindsey is permitted to work for Zynex in the Dallas/Fort Worth market during the twenty-four month restrictive period.

To summarize the situation:  (1) Ms. Lindsey is working for EMSI's direct competitor in a similar geographic area, performing a similar service; (2) Ms. Lindsey has solicited EMSI's specific prospective and existing customers as an employee of Zynex before the expiration of the twenty-four month period; (3) Ms. Lindsey has knowledge of EMSI's confidential business information; (4) Ms. Lindsey has utilized the confidential information to EMSI's detriment; and (5) there is a more than substantial risk that Ms. Lindsey will continue to utilize the confidential information to EMSI's detriment, considering she has already begun to do so.  The already incurred injury, in addition to the inevitable threatened injury to EMSI, clearly outweighs any minor harm to Ms. Lindsey or Zynex if an injunction is granted.

17

### D.      The Public Interest

Section 542.335(1)(i) states: "No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint."   Enforcing the restrictive covenants here will not disserve the public interest.   Further, as stated above, the economic impact to Ms. Lindsey or Zynex is irrelevant to this public interest consideration. Atomic Tattoos, LLC v. Morgan, 45 So. 3d 63, 66 (Fla. 2d DCA 2010).   In short, the public interest is not impacted in any way by the enforcement of the restrictive covenants to which Ms. Lindsey agreed to be bound.

### E.  No bond or a minimal bond is appropriate under Fed.R.Civ.P. 65(c)

Fed.R.Civ.P 65(c) states that "no restraining order or preliminary injunction shall issue except upon the giving of a security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred by any party who is found to have been wrongfully enjoined or restrained."   The Eleventh Circuit has stated that "the amount of an injunction bond is within the sound discretion of the district courts." Carillon Importers, Ltd. v. Moscow Distillery Cristall, 112 F.3d 1125, 1127 (11th Cir. 1997) citing Corrigan Dispatch Co. v. Casa Guzman, 569 F2d 300, 303 (5th Cir. 1978).   Several courts have held that waiver of the bond requirement under Rule 65(c) is appropriate when the enjoined party faces "no likelihood of material harm."   See , e.g. , Crowley v. Local No. 82, Furniture & Piano Moving, 679 F.2d 978, 1000 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526, 551 (1984)(minimal burden imposed on defendants from absence of security); International Controls Corp. v. Vesco, 490

F.2d 1334, 1356 (2d Cir. 1974), cert. denied, 417 U.S. 932 (stating court may waive bond absent proof of likelihood of harm to party enjoined); <u>Continental Oil Co. v. Frontier Refining Co.</u>, 338 F.2d 780, 782 (10th Cir. 1964)(holding no bond necessary when "there is an absence of proof showing a likelihood of harm").

Given the foregoing, it is in the sound discretion of this Court to determine that no bond is required in this case.  The parties have agreed that this case will be ready for trial in a year. Accordingly, if this Court does set any bond, a reasonable sum would be no more than $75,000, which represents approximately one year of wages for Ms. Lindsey when she was employed at EMSI.

## V.    CONCLUSION

For the foregoing reasons, each of the requirements for a preliminary injunction is satisfied.   Accordingly, EMSI respectfully requests that the Court schedule a hearing and preliminary enjoin the following activity until a final hearing can be scheduled on this matter:

(1)     Enjoin Ms. Lindsey from employment by Zynex, or any other employer that competes with EMSI in the Dallas/Fort Worth Market;

(2)     Enjoin Zynex from employing Ms. Lindsey in the Dallas/Fort Worth Market;

(3)     Enjoin Ms. Lindsey, directly or in concert with others, from soliciting EMSI's customers identified in Exhibit "A" to the Declaration of Bryan Wilkinson;

(4)     Enjoin Ms. Lindsey and Zynex from using EMSI's confidential information; and

(5)     Grant such other relief as is just and proper.

Dated this 29th day of November, 2011.

Respectfully submitted,


s/ Matthew K. Fenton

**MATTHEW K. FENTON**
Florida Bar Number: 0002089
**LUIS A. CABASSA, ESQUIRE**
Florida Bar Number 0053643
WENZEL FENTON CABASSA, P.A.
1110 North Florida Avenue, Suite 300
Tampa, Florida  33602
Telephone: 813-224-0431
Facsimile: 813-229-8712
Email: mfenton@wfclaw.com
**Attorneys for Plaintiff**

## RULE 3.01(g) CERTIFICATION

Plaintiff's counsel has conferred with Defendants counsel in a good faith effort to resolve the issues raised in this motion, but counsel have been unable to agree on the resolution of the matters raised in the motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 29, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to the following:

Michael R. Carey
Carey, O'Malley, Whitaker & Muller, P.A.
712 South Oregon Avenue
Tampa, Florida  33606
E-Mail: mcarey@cowmpa.com

Gail G. Holtzman
Ronald H. Trybus
Kass Shuler, P.A.
1505 North Florida Avenue
Tampa, Florida  33602
E-Mail: gholtzman@kasslaw.com

Sean Gallagher
Megan Harry
Polsinelli Shughart, PC
1515 Wynkoop
Suite 600
Denver, Colorado  80202

s/ Matthew K. Fenton
**MATTHEW K. FENTON**